AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Apple iPhone<br>Seized as FP&F<br>No. 2024250600026601-0005 | ) ) ) ) ) ) ) Case No. '24 MJ1341 VET |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841, 846 | Distribution and Conspiracy To Distribute Controlled Substances |
| 21 USC Sec. 952, 960, 963 | Importation and Conspiracy to Import Controlled Substances |

The application is based on these facts:

See Attached Affidavit of HSI Special Agent Corey Egan, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:_____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Corey Egan*
*Applicant's signature*

Corey Egan, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: April 3, 2024

*Judge's signature*

City and state: San Diego, California   Honorable Valerie E. Torres, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Apple iPhone

Seized as FP&F No. 2024250600026601-0005

(the "**Target Device**")

The Target Device is currently in the possession of the Department of Homeland Security, Customs and Border Protection, Fines, Penalties, and Forfeitures located at 9725 Via de la Amistad, San Diego, California, 92154.

# **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of these cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **November 1, 2023, up to and including March 4, 2024**:

a. tending to indicate efforts to deliver controlled substances from Mexico to the United States, or to sell or distribute controlled substances in the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, phone numbers – that may contain electronic evidence regarding efforts to deliver controlled substances from Mexico to the United States to traffic, sell or distribute controlled substances in the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to deliver controlled substance from Mexico to the United States or to traffic, sell or distribute controlled substances in the United States;

d. tending to identify travel to or presence at locations involved in efforts to deliver controlled substance from Mexico to the United States, or to traffic, sell or distribute controlled substances in the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846, 952, 960, and 963 (the Target Offenses).

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Corey Egan, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Apple iPhone
>
> Seized as FP&F No. 2024250600026601-0005

(the "**Target Device**"), as further described in Attachment A and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841(a)(1), 846 (possession with intent to distribute controlled substances and conspiracy to distribute controlled substance), and 952, 960, and 963 (importation of and conspiracy to import controlled substances) (collectively, the "Target Offenses"), as further described in Attachment B. The requested warrant relates to the investigation and prosecution of David Oswaldo MIRANDA Cano ("MIRANDA") for importing approximately 106.88 kilograms (235.63 pounds) of methamphetamine from Mexico into the United States. The Target Device is currently in the possession of the Department of Homeland Security, Customs and Border Protection, Fines, Penalties, and Forfeitures located at 9725 Via de la Amistad, San Diego, California, 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since May 2023. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. I am an "investigative or law

1

enforcement officer of the United States" within the meaning of 18 U.S.C. §§ 2510(7). As such, I am empowered to conduct investigations of, and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, the Otay Mesa Port of Entry, and the Tecate Port Of Entry and then to further distribute the narcotics within the United States, including within the Southern and Central Districts of California. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States, and traffickers within the United States frequently communicate with each other regarding importation and distribution of narcotics. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to

provide further instructions regarding the delivery of the narcotics to a destination within the United States and further distribution thereof.

6. Based on my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods utilized in narcotics trafficking operations and some of the unique trafficking patterns employed by narcotics organizations. I know that drug traffickers often require the use of a telephone facility to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sales of controlled substances. I know that professional drug operations depend upon maintaining their extensive contacts. The telephone enables drug traffickers to maintain contact with associates, suppliers and customers. I also know that drug traffickers sometimes use fraudulent information, such as fictitious names and false addresses, to subscribe to communication facilities, especially cellular phones. Through these investigations, my training and experience, and my conversations with other law enforcement investigators, I have become familiar with the methods used by narcotics traffickers to smuggle and safeguard narcotics, to distribute narcotics, and to collect and launder proceeds related to the sales of narcotics. I am also familiar with the methods employed by large-scale narcotics organizations in attempts to thwart detection by law enforcement including but not limited to the use of cellular telephone technology, counter surveillance techniques, false or fictitious identities and addresses, and coded communications. Based on my training and experience, I am familiar with narcotics traffickers' methods of operation, including their methods of distribution, storage, and transportation of narcotics, their methods of collecting proceeds of narcotics trafficking, and their methods of laundering money to conceal the nature of the proceeds. Based on my training and experience, I know that drug trafficking at the retail level is largely a cash business. I know that drug traffickers often generate large amounts of unexplained wealth, and through financial transaction, attempt to conceal, disguise or legitimize unlawful proceeds, through domestic and international banks and their attendant services, and

otherwise legitimate businesses which generate large quantities of currency. In addition, drug traffickers often use drug proceeds to purchase additional narcotics to perpetuate and promote the ongoing conspiracy. I know that drug traffickers often use cellphones to communicate with co-conspirators in furtherance of their money laundering activities. During the course of my employment, I have also become familiar with the ordinary meaning of controlled substance slang and jargon, and with the methods of packaging, consuming and transferring of controlled substances. I am also familiar with the manners and techniques of traffickers in methamphetamine, cocaine, heroin, marijuana, and fentanyl as practiced locally, including the importation from Mexico.

7. Based on my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular devices (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular device. Specifically, searches of cellular devices of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to deliver controlled substances from Mexico to the United States, or to sell or distribute controlled substances in the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, phone numbers – that may contain electronic evidence regarding efforts to deliver controlled substances from Mexico to the United States to traffic, sell or distribute controlled substances in the United States or to conduct money laundering activity;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to deliver controlled substance from Mexico to the United States or to traffic, sell or distribute controlled substances in the United States;

d. tending to identify travel to or presence at locations involved in efforts to deliver controlled substance from Mexico to the United States, or to traffic, sell or distribute controlled substances in the United States;

4

    e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

8.    On March 4, 2024, at approximately 12:56 a.m., MIRANDA, a Mexican citizen, applied for entry into the United States from Mexico through the Otay Mesa, California Port of Entry in vehicle lane #8. MIRANDA was the driver, sole occupant, and registered owner of a 2006 Ford E350 ("the vehicle") bearing Mexico license plates.

9.    A Customs and Border Protection Officer (CBPO) received two negative Customs declarations from. MIRANDA stated he was crossing the border to go to San Diego, California. The CBPO tapped the gas tank several times, and it tapped solid. MIRANDA and the vehicle were referred to secondary for further inspection. A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotic Detection Dog alerted to trained odor to the gas tank of the vehicle. Further inspection of the vehicle resulted in the discovery of 189 packages concealed in the vehicle: approximately 70 within the gas tank, and approximately 119 in a partition between the seats and cargo area of the vehicle. The packages weighed a total of approximately 106.88 kilograms (235.63 pounds), and a sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

10.    MIRANDA was placed under arrest at approximately 2:10 a.m., for the importation of a controlled substance.

11.    The **Target Device** was discovered within MIRANDA's personal property and was seized by agents. In a post-arrest interview, after he was advised of and waived his *Miranda* rights, MIRANDA also confirmed the **Target Device** belonged to him.

12.    During his post-*Miranda* interview, MIRANDA, in summary, denied knowledge that the narcotics were in the vehicle. MIRANDA stated that he was going to work (to pick up furniture and other merchandise in the United States and bring it back to

Mexico, as he stated) and claimed that he was going to pick up merchandise for his boss. MIRANDA noted that he has done this work since approximately November 2023, made these trips about twice per week, and has been paid $200 after each delivery. He also stated that he does not drive or control the vehicle every day, and while it was registered to him, it is owned by his boss. MIRANDA claimed he has never before smuggled drugs into the United States or been asked to do so. On this occasion, he said, he was going to Santa Ana and would be sent an address when he arrived there, but he was not planning to meet anyone and did not know how the drugs found in his vehicle were supposed to be taken out.

13. Also, post-*Miranda*, MIRANDA consented to a search of his phone. Agents conducted a brief manual review during the interview and conducted an extraction pursuant to his consent on or about March 4, 2023, at the port of entry.

14. Agents have analyzed the extraction from the **Target Device** based on MIRANDA's consent. Their review so far shows that it contains no messages or other data from third-party applications, such as WhatsApp or Facebook Messenger. Based on my training and experience, I am aware that cellphone extractions performed at a port of entry, pursuant to an advanced logical process for instance, do not always capture all data (including all third-party application data) on a cellular device. In addition, based on my training and experience, I know that individuals involved in drug trafficking commonly use other applications, including messaging and communications platforms such as WhatsApp, to communicate with others involved in the offense. Based on my training and experience, as well as my knowledge of this case and the investigation of it, I believe that a further extraction pursuant to a warrant (through a physical or file system process, for instance), can yield additional data and thus further evidence of MIRANDA's offense, as also set forth in Attachment B. Accordingly, I believe that MIRANDA used the **Target Device** in connection with the Target Offenses and likely used means of communication on the device and created or received additional evidence that were not captured through

6

the initial, consent extraction of the **Target Device**.[1] I therefore seek the requested search warrant to conduct a further search, including a manual search, of the **Target Device** as set forth in Attachments A and B.

16. Based on my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that MIRANDA was using the **Target Device** to communicate with others to further the importation of illicit narcotics into the United States and/or communicate with others regarding the movement of illicit narcotics within the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as MIRANDA, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. In this case, MIRANDA told agents that he has worked with his boss and made trips into the United States and back to Mexico for or with merchandise since approximately November 2023, and that he has been

---

[1] I was one of the agents who conducted the cursory manual review of MIRANDA's cellphone during his post-*Miranda* interview. I do not recall whether the **Target Device** contained particular third-party applications or data from them, but as noted herein, agents' review during the interview was a very brief review of certain information on his cellphone, and for the reasons stated above, I still believe additional data, including from third-party applications, will be available through another extraction pursuant to the warrant requested here.

In all events, in seeking this warrant through this Affidavit, I am not relying on any data obtained through the initial, manual review (to the extent agents obtained any information through that review) or agents' review of the extraction pursuant to MIRANDA's consent.

paid for approximately two trips per week. Based on my training and experience, I believe that a search of the cellphone here from at least November 1, 2023, will yield additional information and evidence regarding MIRANDA's involvement in the Target Offenses, co-conspirators, and his purported employment. Accordingly, I request permission to search the **Target Device** for data beginning on **November 1, 2023, up to and including March 4, 2024**.

## METHODOLOGY

17.  It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the devices are subscribed, and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the devices manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephones and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement previously has obtained data from the **Target Device** through MIRANDA's consent, as noted above. However, as also described above, I believe that not all relevant data was obtained through that consent-based extraction and thus request authorization to search the device, including through a manual search, as set forth in Attachments A and B.

### CONCLUSION

21. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of MIRANDA's violations of Title 21, United States Code, Sections 841(a)(1), 846, 952, 960, and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

//
//
//
//
//
//

I swear the foregoing is true and correct to the best of my knowledge, information, and belief.

*Corey Egan*
Corey Egan
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 3rd day of April 2024.

_____
Honorable Valerie E. Torres
United States Magistrate Judge

10